No. 26-11349

# UNITED STATES CIRCUIT COURT
# FOR THE ELEVENTH CIRCUIT

HUNTINGTON NATIONAL BANK,

*Plaintiff-Appellee*,

v.

M/Y SOMETHING ABOUT MERI, et al.,

*Defendant-Appellee*

v.

DANIELLE MORRON

*Non-Party-Appellant*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 0:25-CV-61018-WPD

## APPELLEE'S OPPOSITION TO APPELLANT'S EMERGENCY MOTION TO STAY CONFIRMATION PENDING APPEAL

Serena A. Witter
Nicholas J. Zeher
Robert Allen Law
1441 Brickell Ave., Suite 1400
Miami, FL 33131-3426
(305) 372-3300

*Attorneys for Appellee*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Appellee Huntington National Bank notifies the Court that the following individuals and corporations have an interest in the outcome of this appeal:

1.   Dimitrouleas, William P. (District Court Judge)

2.   G. Toney & Associates, Inc.

3.   Hunt, Patrick M. (District Court Magistrate Judge)

4.   Huntington Bancshares, Inc. (NASDAQ: HBAN) (parent corporation of Appellee)

5.   Huntington National Bank (Appellee)

6.   Kalish, Stanley R. (Defendant in underlying case)

7.   Leto, Christian R. - Olive Judd (counsel for Kalish in underlying case)

8.   Morron, Danielle (Appellant)

9.   Petersen, Christian - Olive Judd (counsel for Kalish in underlying case)

10.  Pulitzer, Jessie – Robert Allen Law (counsel for Huntington National Bank in underlying case)

11.  Witter, Serena A. – Robert Allen Law (counsel for Huntington National Bank)

12. Zeher, Nicholas J. – Robert Allen Law (counsel for Huntington National Bank)

## CORPORATE DISCLOSURE STATEMENT

Huntington Bancshares, Inc. (NASDAQ: HBAN) is publicly-traded corporation that owns 10% or more of the stock of the Appellee Huntington National Bank.

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

STATEMENT ...............................................................................................................2

A.    Legal Background .............................................................................................2

B.    Factual Background ..........................................................................................2

C.    Procedural Background.....................................................................................3

ARGUMENT ...............................................................................................................4

A.    Morron has not established a strong likelihood that she will prevail on the merits. ...............................................................................................................5

      1.    The Emergency Motion is moot. .........................................................5

      2.    This Court lacks jurisdiction over the appeal. ....................................6

           a.    This Court lacks appellate jurisdiction because it cannot directly review a Magistrate Judge's interlocutory order...........6

           b.    Morron is not a party to the case and therefore lacks the right to appeal under 28 U.S.C. § 1292(a)(3). ............................7

      3.    Morron cannot show that she is entitled to a salvage lien in the Vessel.................................................................................................8

B.    Morron will not suffer irreparable injury......................................................12

C.    Staying further confirmation proceedings would substantially injure Huntington. ...................................................................................................12

D.    The public interest weighs in favor of finalizing the confirmation proceedings. ...................................................................................................13

CONCLUSION ..........................................................................................................13

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. River Transp. Co. v. Morton Int'l, Inc.*,
2008 U.S. Dist. LEXIS 48934 (E.D. La. June 26, 2008) ...................................11

*Cantieri Navali Riuniti v. M/V Skyptron*,
621 F. Supp. 171 (W.D. La. 1985), *aff'd and remanded* 802 F.2d
160 (5th Cir. 1986) .........................................................................................11

*Democratic Exec. Comm. of Fla. v. Lee*,
915 F.3d 1312 (11th Cir. 2019) .......................................................................4

*Dickinson v. Petroleum Conversion Corp.*,
338 U.S. 507 (1950) ......................................................................................7, 8

*Dow Chem. Co. v. Barge UM-23B*,
424 F.2d 307 (5th Cir. 1970) ..........................................................................11

*Fla. Immigrant Coal. v. AG*,
2025 U.S. App. LEXIS 14019 (11th Cir. June 6, 2025) ...................................5

*Fulcher's Point Pride Seafood, Inc. v. M/V "Theodora Maria"*,
935 F.2d 208 (11th Cir. 1991) ........................................................................12

*Garcia-Mir v. Meese*,
781 F.2d 1450 (11th Cir. 1986) ......................................................................4, 5

*Girard v. M/V Blacksheep*,
840 F.3d 1351 (11th Cir. 2016) ......................................................................10

*Gowen, Inc. v. F/V Quality One*,
244 F.3d 64 (1st Cir. 2001) ..............................................................................5

*In re Grand Jury Subpoena*,
829 F.2d 1125 (6th Cir. 1987) ..........................................................................6

*League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*,
32 F.4th 1363 (11th Cir. 2022) ........................................................................4

*Meek v. Metropolitan Dade Cty.*,
985 F.2d 1471 (11th Cir. 1993) ........................................................................7

*Ne. Fla. Chapter of Ass'n of Gen. Contractors v. Jacksonville*,
896 F.2d 1283 (11th Cir. 1990) ......................................................................12

*Nken v. Holder*,
556 U.S. 418 (2009) ...........................................................................4

*Opara v. N. E. Auto-Marine Terminal*,
437 Fed. Appx. 190 (3d Cir. 2011) ...................................................5

*Sampson v. Murray*,
415 U.S. 61 (1974) ...........................................................................12

*Smith v. Roundtree*,
704 Fed. Appx. 831 (11th Cir. 2017) ..............................................10

*Terral River Serv. v. SCF Marine, Inc.*,
20 F.4th 1015 (5th Cir. 2021)....................................................10, 12

*Tomasso v. Peddle*,
2026 U.S. Dist. LEXIS 85772 (S.D. Tex. Apr. 20, 2026) ...............11

*United States v. Fiumara*,
605 F.2d 116 (3d Cir. 1979) ..............................................................6

*United States v. Hamilton*,
963 F.2d 322 (11th Cir. 1992)............................................................5

*United States v. Schultz*,
565 F.3d 1353 (11th Cir. 2009) .........................................................6

*Veverica v. Drill Barge Buccaneer No. 7*,
488 F.2d 880 (5th Cir. 1974) ...........................................................10

*Virginian R.R. Co. v. United States*,
272 U.S. 658 (1926) ...........................................................................4

**Statutes**

28 U.S.C. § 1292(a)(3) ...........................................................2, 5, 7, 8

**Other Authorities**

Fed. R. Civ. P. 24 ..................................................................................3, 7

# INTRODUCTION

Huntington National Bank ("Huntington") instituted an *in rem* proceeding to foreclose on its mortgage lien against a vessel known as "M/Y Something About Meri" (the "Vessel"). The District Court allowed Danielle Morron ("Morron") to intervene in the action below to clarify her alleged interest in the Vessel, but after she repeatedly failed to do so, the District Court dismissed her as a party from the suit. Several months later, she attempted to reassert her interest as a salvage lienor for credit so that she could credit bid at the upcoming interlocutory sale, but the Magistrate Judge denied her motion. Morron appeals from that Order and has filed an *Emergency Motion to Stay Confirmation of Judicial Sale* ("Emergency Motion") (USCA11, Doc. 13-1)[1] asking the Court to stay confirmation of the sale in the District Court. Not only is the underlying appeal jurisdictionally defective and wrong on the merits, but the District Court has already confirmed the sale to Huntington, mooting Morron's Emergency Motion. Accordingly, Huntington respectfully requests that the Emergency Motion be denied.

---

[1] "Doc. __, at __" refers to district-court document and page numbers, respectively. "Emergency Motion, at __" refers to Morron's stay motion. "USCA11, Doc. __, at __" otherwise refers to this Court's docket and page numbers.

## STATEMENT

### A. Legal Background

Morron appeals a Magistrate Judge's interlocutory order refusing to allow her to credit bid based on an alleged salvage lien she asserted against the Vessel. First, Morron's Emergency Motion is moot because the District Court confirmed the sale on May 15, 2026. (Doc. 321.) Second, the Court lacks jurisdiction over this appeal because the Magistrate Judge's Order denying Morron authorization to credit bid was not adopted as an order of the District Court, and Morron failed to timely appeal her previous dismissal as an intervenor, rendering her a non-party to the case without the right to appeal under 28 U.S.C. § 1292(a)(3). Third, even on the merits, Morron's attempt to assert a salvage lien fails because she conceded that the owner of the Vessel entrusted it to her as a custodian.

### B. Factual Background

In 2017, Huntington's predecessor-in-interest provided Defendant Dr. Kalish with a loan secured by a mortgage on the Vessel. (Doc. 1.) In 2020, Dr. Kalish gave Morron permission to use the Vessel and serve as its "custodian." (Doc. 261-3, at 39-40, 75; Doc. 194, at 2.) There was a flood in 2022 while she was serving as its custodian, and Morron allegedly took steps to repair the damage. (Doc. 261-4, at 56; Doc. 293, at 4.) In 2025, Morron filed for a lien with the Coast Guard for the repairs she conducted. (Doc. 261-3, at 6; Doc. 261-4, at 57.) Now, she asserts that those facts entitle her to a salvage lien.

**C.    Procedural Background**

On May 22, 2025, Huntington filed this *in rem* action against the Vessel to foreclose on the mortgage. (Doc. 1.) On September 10, 2025, the Court allowed Morron to intervene under Fed. R. Civ. P. 24 to afford her an opportunity to clarify her interest in the Vessel as between her seemingly contradictory claims of ownership of the Vessel and a salvage lien in the Vessel. (Doc. 137, at 3.) After two hearings on August 28, 2025 and January 8, 2026, Magistrate Judge Hunt issued an order on January 27, 2026 (later adopted by District Judge Dimitrouleas) dismissing Morron from the case after finding that it would be "impossible" for her to assert a valid interest in the Vessel due to her "continuously changing interest claims." (Doc. 226; Doc. 261-3; Doc. 261-4; Doc. 245; Doc. 255.) Morron never appealed that dismissal.

On January 16, 2026, the Court ordered an interlocutory sale of the Vessel to occur on April 21, 2026. (Doc. 227; Doc. 294.) After being dismissed from the case, Morron filed a Motion for Authorization to Credit Bid (the "Motion to Credit Bid"), requesting that the Court allow her to credit bid the approximately $1 million salvage lien the Court already found Morron failed to prove. (Doc. 253.) On April 17, 2026, Magistrate Judge Hunt issued an order denying her Motion (the "Order") (Doc. 293), from which Morron filed this appeal on April 21, 2026. (Doc. 293; Doc. 295.)

On April 29, 2026, Judge Dimitrouleas denied Morron's Emergency Motion to Stay Confirmation of Judicial Sale Pending Appeal. (Doc. 310.) On May 9, 2026, Morron filed her Emergency Motion to Stay Confirmation Pending Appeal in this Court. (CA11, Doc. 13-1.) On May 15, the District Court confirmed the sale of the Vessel to Huntington for $500,000. (Doc. 321.)

## ARGUMENT

This Court has described the standard for granting emergency stays as an "extraordinarily high standard of review[.]" *Garcia-Mir v. Meese*, 781 F.2d 1450, 1454 (11th Cir. 1986). "A stay is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1327 (11th Cir. 2019) (quoting *Virginian R.R. Co. v. United States*, 272 U.S. 658, 672 (1926)); *Nken v. Holder*, 556 U.S. 418, 433 (2009) (same). Granting a stay is instead an "exercise of [] judicial discretion." *Id.*

In deciding whether to exercise that discretion, this Court considers four factors: (1) whether the movant has made a "strong showing that he is likely to succeed on the merits"; (2) whether the movant will be "irreparably injured" absent a stay; (3) whether a stay would "substantially injure the other parties interested in the proceeding"; and (4) "where the public interest lies." *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1370 (11th Cir. 2022) (quoting *Nken*, 556 U.S. at 425-426).

"Ordinarily the first factor is the most important." *Fla. Immigrant Coal. v. AG*, 2025 U.S. App. LEXIS 14019, at *7 (11th Cir. June 6, 2025) (quoting *Garcia-Mir*, 781 F.2d at 1453). Nevertheless, "the movant may also have his motion granted upon a lesser showing of a substantial case on the merits when the balance of the equities identified in factors 2, 3, and 4 weighs heavily in favor of granting the stay." *Id.*; *see also United States v. Hamilton*, 963 F.2d 322, 323 (11th Cir. 1992). Morron has not carried her burden here.

**A.     Morron has not established a strong likelihood that she will prevail on the merits.**

**1.      The Emergency Motion is moot.**

"A motion is moot when a court is unable to fashion any form of meaningful relief[.]" *Opara v. N. E. Auto-Marine Terminal*, 437 Fed. Appx. 190, 193 n.1 (3d Cir. 2011) (citation omitted).

Morron's Emergency Motion is moot because the relief she seeks to avoid has already occurred: this Court cannot stop confirmation of a sale that has already been confirmed. Instead, the Court would need to reverse it on appeal of the confirmation order. *See Gowen, Inc. v. F/V Quality One*, 244 F.3d 64, 66 (1st Cir. 2001) (explaining that an order confirming a sale is appealable under § 1292(a)(3)).

Therefore, the Emergency Motion should be denied as moot.

**2.      This Court lacks jurisdiction over the appeal.**

As Judge Dimitrouleas noted below (Doc. 310, at 3.), the absence of appellate jurisdiction is weighed under the first stay factor. *See United States v. Fiumara*, 605 F.2d 116, 117 (3d Cir. 1979) ("Addressing the first of these factors we must weigh not only the likelihood of success on the merits but also whether the defendant will be able to satisfy the threshold requirements of jurisdiction."); *In re Grand Jury Subpoena*, 829 F.2d 1125 (6th Cir. 1987) ("The stay is denied because there is little likelihood of success on appeal in view of the fact that this Court does not have appellate jurisdiction of interlocutory appeals from orders denying motions to quash grand jury subpoenaes.").

> *a.      This Court lacks appellate jurisdiction because it cannot directly review a Magistrate Judge's interlocutory order.*

"The law is settled that appellate courts are without jurisdiction to hear appeals directly from federal magistrates." *United States v. Schultz*, 565 F.3d 1353, 1359 (11th Cir. 2009) (citation omitted).

After the district court dismissed her from the case (Doc. 226, adopted by Doc. 245),[2] Morron nevertheless moved for authorization to credit bid at the interlocutory sale for the Vessel. (Doc. 253.) Magistrate Judge Hunt issued the Order denying the

---

[2] The Magistrate Judge expressly noted that "[g]iven Morron's continuously changing interest claims…it would be nigh impossible for her to" assert a valid interest in the Vessel. (Doc. 226.)

Motion to Credit. (Doc. 293.) Judge Dimitrouleas never adopted that Order from which Morron now appeals, so this Court lacks jurisdiction over her appeal. On this basis alone, Morron has not, and cannot, demonstrate a likelihood of success on the merits.

       b.     *Morron is not a party to the case and therefore lacks the right to appeal under 28 U.S.C. § 1292(a)(3).*

Sub-section 1292(a)(3) only allows appeals from interlocutory admiralty decrees "determining the rights and liabilities of the parties[.]" 28 U.S.C. § 1292(a)(3). However, when the Order was issued, Morron was no longer a "party." While the Court permitted Morron to intervene in the action on September 10, 2025 (Doc. 137), the Court dismissed her as a party on January 27, 2026 when the Court adopted the Magistrate Judge's R&R recommending that "Morron should be dismissed from this case pursuant to Fed. R. Civ. P. 24 for failure to establish a viable claim to the vessel[.]" (Doc. 226, adopted by Doc. 245 as amended by Doc. 255; Doc. 255, at n.1.)

Dismissing an intervenor from a case is a final appealable order as to the intervenor. *See Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 516 (1950); *Meek v. Metropolitan Dade Cty.*, 985 F.2d 1471, 1476 (11th Cir. 1993). In *Dickinson*, the Supreme Court explained:

> We hold the decree of April 10, 1947, to have been a final one as to Petroleum 6 and one from which it could have appealed and that its failure to appeal therefrom forfeits its right of review. Its attempt to

7

review the earlier decree by appealing from the later one is ineffective, and its appeal should be dismissed.

338 U.S. at 516. The Supreme Court reasoned that "[w]hen the application for intervention is denied, the would-be intervenor is foreclosed from further action in the case and its proceedings cannot affect him nor can he affect them." *Id.* at 513.

Like the intervenor in *Dickinson*, Morron failed to appeal the District Court's final order dismissing her from the case. It follows logically that if the proceedings after Morron's dismissal on January 27, 2026, could not "affect" Morron, then Magistrate Judge Hunt's Order denying her Motion to Credit Bid was not an order "determining the rights and liabilities of" Morron under 28 U.S.C. § 1292(a)(3). This Court lacks appellate jurisdiction.

> **3. Morron cannot show that she is entitled to a salvage lien in the Vessel.**

It is critical to emphasize that Morron has frequently changed her position on the nature of her interest in the Vessel. At the hearing on August 28, 2025, she asserted:

> The Court: You're simply saying that you are the owner of a salvage lien?
>
> Ms. Morron: Well, I don't have a legally vested ownership . . . The only cognizable *in rem* claim I have is the salvage claim.
>
> The Court: So you're conceding that you don't have a claim as an owner or a partner; you have a claim as a lienholder based on the salvage claim?

Ms. Morron: Not in admiralty, I don't. Against Dr. Kalish, no.

(Doc. 261-3, at 18-19.) At the same hearing, she produced a document purporting to be a "certified copy of [her] salvage lien from the National Vessel Documentation Center" that was "in the name of M/Y Scratch, my single member LLC[.]" (Doc. 261-3, at 13; Doc. 1-7.) In direct contradiction of those representations, she also avowed that "Claimant does not assert a salvage lien in this Verified Claim." (Doc. 194, at 3.)

Then, during her own cross examination of Dr. Kalish, she seemed to return to her theory that she is an owner of the Vessel. (Doc. 261-3, at 73.) She insisted that she and Dr. Kalish "share ownership of [the] vessel that is in [Dr. Kalish's] name alone[.]" (*Id.*) When she asked Dr. Kalish if he allowed the Virgin Islands Department of Planning and Natural Resources officer to seize the boat, he explained:

> And I even spoke to the man and said you are the official custodian of the boat while the boat was there because the boat, I didn't want it to be damaged or someone to steal something. So I told whoever that was that you had specific instructions from me to be the custodian of the boat, to watch it. And that's basically all I said.

(*Id.* at 75.) At a later hearing on January 8, 2026, Morron claimed to have a "possessory interest to the vessel" (Doc. 261-4, at 8.) For instance:

Mr. Zeher: Ms. Morron, do you own this boat?

Ms. Morron: I'm the statutorily recognized vessel owner.

Mr. Zeher: So does that mean you do not own this boat?

Ms. Morron: Legally speaking, that is what that means.

(Doc. 261-4, at 55-56.)

In her Motion to Credit Bid and the pending Emergency Motion, she has opted to return to her purported salvage lien theory. There are three elements necessary to assert a valid salvage lien: "1. A marine peril. 2. Service voluntarily rendered when not required as an existing duty or from a special contract. 3. Success in whole or in part, or that the service rendered contributed to such success." *Girard v. M/V Blacksheep*, 840 F.3d 1351, 1354 (11th Cir. 2016). Morron is likely to fail on the merits of the second element because she did not render voluntary services to the Vessel.

An alleged salvage lienor lacks a salvage lien if she provides her services pursuant to a preexisting duty. *See Veverica v. Drill Barge Buccaneer No. 7*, 488 F.2d 880, 883 (5th Cir. 1974). For instance, in *Terral River Serv. v. SCF Marine, Inc.*, 20 F.4th 1015 (5th Cir. 2021), the court held that "because [the claimant] had a preexisting duty ***as the barge's bailee***, a duty of ordinary care owed to SCF, that forecloses its salvage claim." *Id.* at 1020 (emphasis added). A bailee is, by definition, a custodian. *See Smith v. Roundtree*, 704 Fed. Appx. 831, 833 (11th Cir. 2017) (citation omitted) ("A bailment involves either an express or implied mutual agreement to safe keep property between the owner and its custodian either

10

gratuitously or for some consideration."). Custodian/bailees of vessels owe preexisting duties to provide services to vessels under their care because "the bailee or custodian of a vessel is, in fact, the party best situated to prevent such accidents[.]" *Am. River Transp. Co. v. Morton Int'l, Inc.*, 2008 U.S. Dist. LEXIS 48934, at 5 (E.D. La. June 26, 2008) (citing *Dow Chem. Co. v. Barge UM-23B*, 424 F.2d 307, 311 (5th Cir. 1970)).

Here, Morron's own cross-examination of Dr. Kalish backfired when she elicited uncontradicted testimony that she performed her "salvage" efforts in 2022 pursuant to her preexisting duty as the bailee/custodian of the vessel. (Doc. 261-4, at 8.) Dr. Kalish "gave Ms. Morron permission to use the boat[.]" (*Id.* at 40.) Morron herself expressly claimed her "lawful possession" of the Vessel because she had "custody, and operational control of Vessel with the knowledge and acquiescence" of Dr. Kalish. (Doc. 194, at 2.)

Even if the Court credits her as an "owner" of the vessel, that does not help her case. It is "well-settled law that a vessel owner, part owner, or joint venturer cannot hold a maritime lien on which he enjoys such an interest." *Tomasso v. Peddle*, 2026 U.S. Dist. LEXIS 85772, at *8 n.4 (S.D. Tex. Apr. 20, 2026) (quoting *Cantieri Navali Riuniti v. M/V Skyptron*, 621 F. Supp. 171, 186 (W.D. La. 1985) (collecting authorities), *aff'd and remanded* 802 F.2d 160 (5th Cir. 1986)). One need not even be an owner: "when the seas get rough one who looks, thinks, acts, and profits like

an owner cannot retreat to the relatively safe harbor of a maritime lienor[.]" *Fulcher's Point Pride Seafood, Inc. v. M/V "Theodora Maria"*, 935 F.2d 208, 213 (11th Cir. 1991) (citation omitted). The record shows Morron acted like an owner. (Doc. 261-3, at 40) ("Q. [W]ould it be fair to say she acted as [if] she owned the boat? A. Yes."). This testimony is uncontradicted.

Accordingly, Morron is unable to show likelihood of success on the merits. *See Terral River Serv.*, 20 F.4th at 1020.

**B.      Morron will not suffer irreparable injury.**

According to Morron's Emergency Motion, she will suffer irreparable harm because confirming the sale transfers title free and clear of her alleged salvage lien. (USCA11, Doc. 13-1, at 24.) Even if it did, it would be a purely monetary injury, which is not sufficient to warrant a stay. *See Ne. Fla. Chapter of Ass'n of Gen. Contractors v. Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)) ("The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.").

**C.      Staying further confirmation proceedings would substantially injure Huntington.**

Morron argues that Huntington would not be injured by further delay in confirmation because Huntington already controls the vessel. (Doc. 13-1, at 25.) Morron ignores the obvious point that Huntington controls the vessel because it pays

the custodian fees of approximately $11,000 per month. (Doc. 165, at 5.) Finalizing the confirmation proceeding to transfer title to the Vessel to a new owner prevents these needless costs.

**D.      The public interest weighs in favor of finalizing the confirmation proceedings.**

Morron argues the public interest weighs in favor of staying confirmation proceedings because it incentivizes salvors to rescue imperiled vessels. (Emergency Motion, at 26.) The purpose of salvage liens has nothing to do with the equities of this case. Requiring Huntington to expend substantial sums to maintain custody of the Vessel wastes resources on a Vessel that could be sold to private parties incentivized to improve and use it, or recycle its usable parts. Additionally, each day the litigation continues, the value of the Vessel is reduced.

Accordingly, the public interest weighs in favor of denying her Emergency Motion.

<u>**CONCLUSION**</u>

The Court should deny the Emergency Motion.

Dated: May 19, 2026

Respectfully Submitted,

*/s/ Serena Witter*

Serena A. Witter, Esq.
Florida Bar No. 45216
Robert Allen Law
1441 Brickell Ave., Suite 1400
Miami, FL 33131
Tel.   (305) 372-3300
Email switter@robertallenlaw.com
        litigation@robertallenlaw.com

*-and-*

Nicholas J. Zeher
Florida Bar No. 1003565
Robert Allen Law
1441 Brickell Ave., Suite 1400
Miami, FL 33131
(305) 372-3300
Email nzeher@robertallenlaw.com

(*Admission to this Court pending*)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing *Appellee's Opposition to Appellant's Emergency Motion to Stay Confirmation Pending Appeal* was filed with the Clerk of Court using the CM/ECF system this 19th day of May, 2026, which will serve a copy on all parties and counsel of record.

/s/ Serena Witter
Serena A. Witter, Esq.